# NO. 12-18-00314-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ZACOVEY DION GIBSON,* *APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Zacovey Dion Gibson appeals his conviction for possession of a controlled substance with the intent to deliver. He presents three appellate issues for our consideration. We affirm.

### BACKGROUND

Appellant was indicted for possession of a controlled substance, namely methamphetamine, in an amount of more than one but less than four grams, with the intent to deliver. The offense was alleged to have occurred on March 3, 2017 in Angelina County, Texas. Appellant pleaded "not guilty" and the case proceeded to a jury trial.

After voir dire, Appellant objected to the trial court seating the jury on grounds that the State exercised preemptory strikes against two African American venire members based upon their race. After a hearing, the trial court overruled Appellant's objections and the jury was sworn and impanelled.

During the presentation of evidence, the State called several witnesses to establish that Appellant sold methamphetamine out of a hotel room in the Texas Inn located in Lufkin, Texas. At the conclusion of trial, the jury found Appellant "guilty" of possession of a controlled substance with intent to deliver. Appellant elected to have the trial court assess punishment. After a

punishment hearing, the trial court sentenced Appellant to fifteen years of imprisonment. This appeal followed.

## *BATSON* CHALLENGE

In Appellant's first issue, he argues that the trial court erred by overruling his *Batson* challenge. The State counters that it proffered valid, race neutral reasons for both of its challenges, and that Appellant failed to prove the State's challenges were the product of purposeful racial discrimination.

### Standard of Review and Applicable Law

The Equal Protection Clause of the United States Constitution and Article 35.261 of the code of criminal procedure prohibit the use of a preemptory challenge to strike a potential juror based upon the juror's race. U.S. CONST. AMEND. XIV; *see Batson v. Kentucky*, 476 U.S. 79, 86, 106 S. Ct. 1712, 1717, 90 L. Ed. 2d 69 (1986); *see also* TEX. CODE CRIM. PROC. ANN. art. 35.261 (West 2006). If a party perceives the other has exercised a preemptory challenge based on purposeful racial discrimination, that party may request what is colloquially termed a "*Batson*" hearing. *See* TEX. CODE CRIM. PROC. ANN. art. 35.261.

A three-step process is used to analyze *Batson* claims: (1) the opponent of the peremptory challenge must present a prima facie case of racial discrimination, (2) if he does so, the burden shifts to the proponent of the peremptory challenge to present a race-neutral reason for the challenge, and (3) if that proponent satisfies this burden, the trial court must then determine whether the opponent has proven purposeful racial discrimination. *Colone v. State*, 573 S.W.3d 249, 263 (Tex. Crim. App. 2019); *Irving v. State*, 12-17-00157-CR, No. 2017 WL 6350097, at *1 (Tex. App.—Tyler Dec. 13, 2017, pet. ref'd) (mem. op., not designated for publication).

A trial court's ruling on a *Batson* challenge must be upheld unless it is clearly erroneous. *Nieto v. State*, 365 S.W.3d 673, 676 (Tex. Crim. App. 2012). To hold that a decision was clearly erroneous, we must be left with a definite and firm conviction that a mistake has been committed. *Goldberg v. State*, 95 S.W.3d 345, 385 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). The clearly erroneous standard is highly deferential because the trial court is in the best position to determine whether the State's facially race neutral explanation for a peremptory strike is genuinely race neutral. *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). We focus on the

2

genuineness rather than on the reasonableness of the State's asserted race neutral reason. *Id.* at 533–34.

In evaluating the genuineness of the State's proffered race neutral reason, we consider whether (1) the reason is related to the facts of the case, (2) the State meaningfully questioned the challenged venire member, (3) persons with the same or similar characteristics as the challenged venire member were not struck, (4) there was disparate examination of the venire members, and (5) an explanation was based upon a group bias although the trait is not shown to apply to the challenged venire member. *Williams v. State*, 804 S.W.2d 95, 105–06 (Tex. Crim. App. 1991). We consider the entire voir dire record and need not limit our review to the specific arguments propounded in the trial court. *Nieto*, 365 S.W.3d at 676. However, we may not substitute our judgment for the trial court's in deciding that the proponent's explanation was a pretext. *Id.*

## Prima Facie Showing

At the conclusion of voir dire, Appellant raised a *Batson* challenge to the State's preemptory challenges to venire members 5 and 14. The record reflects that Appellant, as well as the two venire members, are African American. The trial court asked the State to respond. The State did not contest that Appellant made a prima facie showing, and offered race neutral reasons for its use of preemptory challenges against venire members 5 and 14.

*Batson* challenges are subject to ordinary rules of procedural default. *See Flores v. State*, 33 S.W.3d 907, 926 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). When, as here, the State offers explanations for exercising preemptory challenges on the contested venire members, and the trial judge rules on the ultimate question of discrimination, the issue of whether the defendant made a prima facie case is moot and not subject to appellate review. *Id.*; *see also Colone*, 573 S.W.3d at 263 (State's allegation that it had race-neutral reasons for preemptory challenges renders step one of *Batson* analysis moot). Thus, we will proceed to step two.

## Race Neutral Reasons

With respect to its exercise of a preemptory challenge against venire member 5, the state offered the following explanation:

> She knows the Defendant, and she was able to articulate that she -- her family is somehow related to his child, and that also names that were mentioned, alluded by questions that [defense counsel] asked [venire member 5], that there's a Jane Johnson and a Joe Miller. And I don't know if they

have criminal backgrounds. I did not have enough time to check that. But I – those are the three reasons, Your Honor.[1]

With respect to its exercise of a peremptory challenge against venire member 14, the State offered the following explanation:

> The first thing that I noticed about this young lady is she's young. And then when [defense counsel] asked about a drug problem, she's not aware of any drug problems of -- her being young, not being aware of what's going on in the community, I felt that it was proper to strike her.

In step two of the *Batson* analysis, the proponent of the preemptory challenge need only offer an explanation that is racially neutral on its face. *Colone*, 573 S.W.3d at 263. No discriminatory intent is inherent in the prosecutor's explanations. *See id.*; *Tennyson v. State*, No. 12-16-00225-CR, 2018 WL 1180750, at *3 (Tex. App.—Tyler Mar. 7, 2018, pet. ref'd) (mem. op.). We therefore conclude that the State satisfied its burden of production by offering a facially race neutral reason for its preemptory challenges to venire members 5 and 14. *See Tennyson*, 2018 WL 1180750 at *3.

## Genuineness of Explanations

After the State's burden of producing race neutral explanations was satisfied, the burden shifted to Appellant to prove that the proffered explanations were mere pretext for purposeful discrimination. *Id.* Accordingly, we now turn to step three of the *Batson* analysis to determine whether Appellant met his burden of persuasion to show the State's race neutral explanations are mere pretext for purposeful racial discrimination. *See id.*

In support of Appellant's argument that the State's preemptory challenge of venire member 5 was pretextual, he points out that venire member 5 testified that her brother in law's sister was Appellant's son's mother, but venire member 5 had no personal relationship with Appellant and the relationship would not affect the venire member's ability to be a fair juror. Appellant also argues that the State's reason that it was unable to check the criminal histories of Jane Johnson and Joe Miller "is not a racially neutral reason" and argues that the "courts cannot allow the State [to] use its strikes to take off minorities because they have not had time to check the jury member's criminal history much less the history of their associates."

---

[1] Jane Johnson and Joe Miller are pseudonyms.

4

In support of Appellant's argument that the State's preemptory challenge of venire member 14 was pretextual, he argues that the State's reason that venire member 14 is young is "a discriminatory basis on its face [because] [i]t is unconstitutional to strike the young, or the very old, due to their age." Appellant further argues that the State's reasoning that venire member 14 was young and unaware of a drug problem in the community is not a racially neutral explanation. Appellant argues, "[B]ecause the State failed to demonstrate a clear and reasonably specific, legitimate race neutral reason for its preemptory strikes of the…two African American venire members, the trial court's determination was clearly erroneous…"

We note that Appellant cites no authority for his contentions, other than ***Batson*** and ***Brooks v. State*** for the argument that a prosecutor "may not rebut the presumption merely by denying that he had a discriminatory motive or by affirming his good faith in individual selections."[2] *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

Even so, in turning to the voir dire record to assess whether the trial court's ruling was clearly erroneous, our review shows that the approximately seventy venire members were examined in a group. *See **Nieto***, 365 S.W.3d at 676. The State asked the venire members if anyone knew Appellant. Venire member 5 was the only venire member who indicated she knew Appellant, because of the familial relationship between her and Appellant's child's mother. The State moved to strike venire member 5 for cause, but the trial court denied the motion.

After the State offered its explanation for striking venire member 5, the trial court gave Appellant's counsel an opportunity to persuade the court that the State's explanations were pretextual. The following exchange occurred on the record:

> The court: And, [defense counsel], what else you have? Anything?
> Appellant's counsel: Not as to [venire member 5].
> The court: Well, [venire member 5], it appeared to me, because she was brought up during the challenge for cause portion, she did indicate that she had some type of relationship, through a family, and I find that to be a racially neutral reason for the strike.

With respect to venire member 14, Appellant's counsel asked if she believed there was a drug problem in the community, and the following exchange occurred:

---

[2] 476 U.S. at 97, 106 S. Ct. 1723-23; 802 S.W.2d 692, 694-95 (Tex. Crim. App. 1999).

Appellant's counsel: Thank you. All right, let's see. [Venire member 14] --
Venire Member 14: Yes, sir.
Appellant's counsel: -- do you think there's a drug problem in Angelina County?
Venire Member 14: Not that I'm openly aware of –
Appellant's counsel: Not sure of.
Venire Member 14: -- but I don't know.

Appellant's counsel asked another venire member the same question, and that venire member replied there was a drug problem in the county. Thereafter, Appellant's counsel asked the panel whether they or their loved ones had been personally impacted by drugs. Approximately twenty five percent of the panel responded affirmatively.

With respect to venire member 14, the trial court similarly gave Appellant's counsel an opportunity to persuade it that the State's explanations were pretextual:

The court: Okay. [Defense counsel], you got a position?
Appellant's counsel: Yes, Your Honor. I believe many of the jurors – there's other jurors who are young. They're just not -- happen to be African American. And others did not know about the drug problem. I don't believe those are, actually, racially neutral enough reasons to strike [venire member 14].
 The court: Well, I can't tell you that – I do recall that the question was asked if there was a drug problem or not a drug problem here in Angelina County, and I know that at least one juror said there was not, and I'll –
Appellant's counsel: I believe that was [venire member 14]. I was asking the questions, Your Honor.
The court: Okay. Well, then, I find that's a racially neutral reason to strike Juror Number 14…

Beyond Appellant's counsel's statements discussed above, Appellant offered no further evidence or argument to support his contention that the State's explanations were a pretext for racial discrimination. Similarly, on appeal, Appellant makes no meaningful argument, beyond the conclusory statements quoted above, to suggest that the trial court's ruling was clearly erroneous.

Our review of the record fails to suggest that the State did not strike persons with the same or similar characteristics as the challenged venire members. Venire member 5 was the only venire member related to Appellant. *See Williams*, 804 S.W.2d at 105–06. Moreover, venire member 5 was the only venire member that knew Appellant. This Court and others have recognized that the use of a preemptory strike when a venire member knows a defendant can be valid. *See Tave v. State*, 899 S.W.2d 1, 3 (Tex. App.—Tyler 1994, pet. ref'd); *Burns v. State*, 958 S.W.2d 483, 486 (Tex. App.—Houston [14th Dist.] 1997, no pet.); *Densey v. State*, 191 S.W.3d 296, 316 (Tex. App.—Waco 2006, no pet.). Venire member 14 was the only venire member to report unawareness of a drug problem in the community, despite twenty five percent of the panel

indicating that they or someone close to them had been personally affected by drugs. *See Williams*, 804 S.W.2d at 105-06. The State meaningfully questioned venire member 5, but not venire member 14. However, meaningful questioning is not dispositive of the issue of purposeful discrimination. *Grant v. State*, 325 S.W.3d 655, 656, 660 (Tex. Crim. App. 2010). The evidentiary value of a lack of questioning is significantly less when, as here, venire members have answered written questionnaires and are examined in a group. *Id.* Moreover, the voir dire record revealed no disparate examination of venire members. *See Williams*, 804 S.W2d at 105-06. While Appellant argues that venire member 14's youth was a pretextual reason for racial discrimination, there is no evidence in the record that the State did not exercise preemptory strikes against other young jurors.[3] Moreover, the trial court announced that it found venire member 14's views on the lack of a drug problem to be the race neutral reason to support the State's exercise of a preemptory challenge against venire member 14.

We are mindful that the trial court exercises a crucial role in evaluating *Batson* claims, because the trial court must evaluate the prosecutor's credibility, and the best evidence of discriminatory intent is often found in the demeanor of the attorney exercising the preemptory challenge. *Id.*; *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S. Ct. 1203, 1208, 170 L. Ed. 2d 175 (2008). We cannot minimize the importance of the court's presence at trial. *Tave*, 899 S.W.2d at 4. The court was present at voir dire and the *Batson* hearing to hear the explanations offered by the State and observe the demeanor of the potential jurors. *Id.* The prosecutor gave race neutral explanations for its preemptory challenges, and Appellant failed to counter the prosecutor's testimony with evidence demonstrating that the State's explanations were a pretext in an attempt to discriminate. *Id.* Therefore, we cannot say, based upon the record before us, that the trial court's rulings on Appellant's *Batson* challenges were clearly erroneous. *See Goldberg*, 95 S.W.3d at 385. Thus, we overrule Appellant's first issue.

---

[3] Appellant's trial counsel argued to the trial court that the State did not exercise preemptory challenges against other young jurors, however, he offered no evidence to support this contention. On appeal, Appellant states that it is "unconstitutional to strike the young, or the very old, due to their age." He cites no authority for this contention, and we note that age has been recognized as a legitimate reason for exercising a preemptory challenge against a juror. *See e.g. Dixon v. State*, 828 S.W.2d 42, 45 (Tex. App.—Tyler 1991, pet. ref'd).

In Appellant's third issue, he complains that the evidence is insufficient to support his conviction.

## Standard of Review and Applicable Law

When determining if evidence is sufficient to sustain a conviction, the court must apply the *Jackson v. Virginia* standard. *See Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010). This standard requires the court to determine whether, considering all the evidence in the light most favorable to the verdict, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Brooks*, 323 S.W.3d at 899. In order to consider the evidence in the light most favorable to the verdict, we must defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899; *see Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). The fact finder is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). When conflicting evidence is presented, we must resolve those conflicts in favor of the verdict and defer to the fact finder's resolution of conflicts. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. We may not substitute our own judgment for that of the fact finder. *See id.*, 443 U.S. at 319, 99 S. Ct. at 2789; *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can be alone sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

A person commits the offense of manufacture or delivery of a controlled substance when he knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance in penalty group one. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2017). The offense is a second degree felony if the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilatants, one gram or more but less than four grams. *Id.*

8

§ 481.112(c). Methamphetamine is classified as a controlled substance in penalty group one. *Id.* § 481.102(6) (West Supp. 2019).

To establish possession the State must prove that the accused (1) exercised actual care, custody, control, or management over the substance; and (2) was conscious of his connection with it and knew what it was. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.002 (38) (West Supp. 2019). Evidence which links the accused to the contraband suffices for proof that he knowingly possessed the substance. *Brown*, 911 S.W.2d at 747. The evidence may be direct or circumstantial, but must establish the accused's connection with the substance was more than just fortuitous. *Id.* However, the evidence need not exclude every other outstanding reasonable hypothesis except the defendant's guilt. *Id.* at 748. There is no set formula of facts necessary to support an inference of knowing possession. *Hyett v. State*, 58 S.W.3d 826, 830 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). The focus is not on the number of facts linking the accused to the drugs, but on the logical force they have in establishing the offense. *Evans*, 202 S.W.3d at 162.

Intent to deliver may be established by circumstantial evidence. *Rhodes v. State*, 913 S.W.2d 242, 251 (Tex. App.—Fort Worth 1995), *aff'd,* 945 S.W.2d 115 (Tex. Crim. App. 1997). Intent to deliver may be inferred by the quantity of drugs possessed or the manner in which the drugs are packaged. *Id.* Other factors considered include the nature of the location where the defendant was arrested, the presence of drug paraphernalia for use or sale, the defendant's possession of a large amount of cash, and the defendant's status as a drug user. *See Brown v. State*, 243 S.W.3d 141, 150 (Tex. App.—Eastland 2007, pet. ref'd).

**Analysis**

At trial, Norma Berreles, the owner of the Texas Inn, testified that Appellant and his girlfriend, Jala Lawson, rented room 46 on February 1 and stayed until their arrests on March 3. Berreles called the Angelina County Sheriff's Office (ASCO) on March 3 around midnight because of loud noises coming from room 46.

Deputy Michael Teer arrived and found Appellant and another male standing outside room 46. Appellant told Teer there was no disturbance and Teer allowed Appellant to leave on foot. Teer did not enter room 46 and left the hotel. Berreles made a second call to the ACSO around 3:00 a.m. because Lawson and Appellant were arguing. Lieutenant Ray Stubbs decided ASCO

would return to room 46 and arrest Appellant on an outstanding misdemeanor warrant to diffuse the situation.

Teer returned to room 46 and saw Appellant being arrested by another deputy. As Teer approached room 46, he noticed the door was open. Teer looked inside and saw a male, later identified as Michael Hamilton, sitting in a chair, and a female, later identified as Latoya Griffin, sitting on the bed. Teer noticed a set of small black scales, on which he saw what appeared to be methamphetamine residue, in plain view. Teer observed several old and new electronic devices in the room. He suspected that the room's occupants were selling drugs. Teer testified that drug dealers commonly accept property, such as electronics, in exchange for drugs.

When Teer heard Lawson flushing the toilet in the bathroom, he suspected she was flushing drugs down the toilet. Lawson appeared nervous when she exited the bathroom. Appellant, Lawson, and Hamilton denied ownership of the scales. Lawson and Hamilton were arrested for possession of drug paraphernalia.

During a search incident to Hamilton's arrest, deputies located syringes, two bags of methamphetamine, and marijuana in Hamilton's pocket. Hamilton told deputies that Appellant placed a black bag containing methamphetamine in his Buick LeSabre prior to the deputies' arrival. The Buick was parked directly in front of room 46, with its back doors open and front passenger windows partially rolled down. Law enforcement used a drug detection dog to perform an open air sniff around the Buick and the dog alerted to the driver's side door. Deputies subsequently searched the vehicle and located a black bag containing a glass pipe and a handwritten note. Inside the handwritten note was a plastic bag containing 3.41 grams of methamphetamine.[4] Deputies also found a handgun and $407 in cash in the vehicle.

Deputies searched room 46 and located six cell phones, various old and new electronics, plastic baggies, a handgun, and the owner's manual for the Buick. Inside a lockbox, deputies located several pieces of jewelry, the title to the Buick, and a bill of sale indicating that Appellant purchased the Buick from Robert Cantu on March 1.

Appellant initially denied knowing anything about the vehicle, but later admitted to Brett Maisel, a former lieutenant with the ASCO, that he purchased the Buick from a man named Robert. Appellant admitted ownership of the jewelry in the lockbox. Although Appellant initially denied any knowledge of the guns found, he later admitted to acquiring one of the guns from a convicted

---

[4] Appellant stipulated that the substance found in the Buick constituted 3.41 grams of methamphetamine.

felon named Amick Jackson. Appellant told Maisel he did not know there was methamphetamine in the Buick.

Hamilton testified he was on community supervision for possession of methamphetamine as a result of his arrest on March 3 and was required to testify as a condition of his community supervision. He told the jury that he was acquainted with Appellant for approximately a year prior to his arrest. Hamilton testified that he took Appellant and a man named Jerry Buchleiter to a salvage yard to purchase the Buick three to four days prior to their arrest. Buchleiter drove the Buick from the salvage yard to room 46, while Appellant drove Hamilton's vehicle back to room 46. Upon arrival, Hamilton left with Buchleiter, but later returned to room 46 where he remained until his arrest on March 3. Hamilton testified that he bought methamphetamine, which was found on his person on March 3, from Appellant.

Hamilton testified that Lawson and Appellant were arguing loudly on March 3. Hamilton testified that Appellant took a bundle to the Buick prior to the ASCO's arrival, and that the black bag containing methamphetamine, which was found inside the Buick, belonged to Appellant. He testified that Appellant and Lawson are "drug dealers" and were selling drugs out of room 46. Hamilton testified that Appellant tried to convince him to lie and testify that Buchleiter put the drugs in the Buick.

During her testimony, Lawson confirmed that she and Appellant rented room 46 and bought the Buick. She testified to authoring the note in which the methamphetamine found in the Buick was wrapped. Lawson further testified that the property in the lockbox belonged to Appellant. Robert Cantu testified that he sold the Buick to Appellant for $400.

Appellant argues that while "there might have been some evidence to support him possessing a controlled substance…there was clearly insufficient evidence that [Appellant] possessed with the intent to deliver." In support of his argument, Appellant points to a myriad of circumstances demonstrated by the trial evidence:

1. Appellant was not in the Buick when the methamphetamine was found and ASCO deputies did not locate the keys or title to the vehicle on Appellant's person.
2. Teer never observed Appellant inside room 46.
3. Appellant cooperated with law enforcement.
4. The State linked Appellant to the methamphetamine through Hamilton's testimony, which was self-serving.
5. The methamphetamine found in the vehicle was inside a handwritten note authored by Lawson.

11

6. ASCO deputies located a piece of paper on Griffin's person that was visually similar to paper found in the Buick.[5]
7. Lawson testified that Hamilton had access to the Buick and accessed it the night of the offense.
8. Lawson testified that Appellant had no methamphetamine.
9. Lawson testified that Hamilton was heavily addicted to methamphetamine, used it constantly in the room, and threw "tantrums" if he did not use it.

Appellant further argues that "[A]ll the evidence showed that three other people Griffin, Lawson or Hamilton placed the meth in the glovebox of the Buick [sic]." Appellant argues that while Appellant "did have some ties to the Buick…this evidence does not show that [Appellant] had actual knowledge of the meth in the glove box." In addition, Appellant argues that Appellant denied knowledge of the drugs, and because the evidence established that both Buchleiter and Hamilton recently accessed the Buick and the ACSO failed to gather any forensic evidence to connect Appellant to the drugs, the evidence is insufficient to show Appellant knowingly possessed the methamphetamine found in the Buick.

The knowledge element of the crime of possession of a controlled substance is subjective and usually must be inferred in the absence of an admission by the accused. *Grant v. State*, 989 S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.) Mere presence of a defendant in the vicinity of drugs will not establish knowing possession. *See Oaks v. State*, 642 S.W.2d 174, 177 (Tex. Crim. App. 1982). However, presence or proximity to the drugs, when combined with other direct or circumstantial evidence, may be sufficient. *Evans*, 202 S.W.3d at 162.

Here, the evidence showed that Appellant rented and was in control of room 46. Inside room 46, deputies discovered digital scales with suspected methamphetamine residue, small plastic baggies, a firearm, and several old and new electronics. In Appellant's car, deputies located 3.41 grams of methamphetamine, a glass pipe, another firearm, and $407 in cash. Additionally, the State called Hamilton, who testified that Appellant placed a bundle in the Buick prior to the ASCO's arrival. Hamilton further testified that the black bag containing the methamphetamine found in the Buick belonged to Appellant. Hamilton testified that Appellant sold methamphetamine out of room 46. Teer testified that the amount of methamphetamine found in the vehicle was more than is typical for personal use, and that individuals selling drugs commonly accept property, such as electronics, in exchange for drugs. Stubbs and Maisel testified that the totality of the circumstances led the ASCO to believe that Appellant was in possession of

---

[5] The record reflects that deputies found a "torn piece of baggy," not paper, on Griffin's person.

12

methamphetamine with the intent to deliver. These facts link Appellant to the methamphetamine found in the vehicle, and serve as circumstantial evidence of his intent to deliver. *See Willis v. State*, 192 S.W.3d 585, 593 (Tex. App.—Tyler 2006, no pet.) (discussing non-exclusive list of factors that may be considered when evaluating links); *see also Rhoades*, 913 S.W.2d at 251; *Brown*, 243 S.W.3d at 150.

As previously stated, the evidence is not required to exclude every reasonable hypothesis except for Appellant's guilt. *See Brown*, 911 S.W.2d at 748. The jury was aware of Hamilton's circumstances, because he admitted to buying and using drugs. Furthermore, Hamilton admitted that he was required to testify as a condition of his community supervision. Hamilton's credibility and the other isolated facts that Appellant identified were before the jury, and resolved in favor of Appellant's guilt. *See Brooks*, 323 S.W.3d at 899; *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789, 2793.

Viewing the evidence in the light most favorable to the State, we conclude that the jury was rationally justified in finding, beyond a reasonable doubt, that Appellant knowingly possessed methamphetamine with intent to deliver. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Evans*, 202 S.W.3d at 162; TEX. HEALTH & SAFETY CODE ANN. § 481.112(a). Because the evidence is sufficient to support Appellant's conviction, we overrule his third issue.

## JURY ARGUMENT

In Appellant's second issue, he complains that the State made an impermissible closing argument resulting in reversible error. The State counters that Appellant has not preserved this complaint for our review because he failed to move for a mistrial. Alternatively, the State argues that the jury argument does not constitute reversible error.

### Standard of Review and Applicable Law

We review a claim of improper jury argument for an abuse of discretion. *Turner v. State*, No. 12-09-00264-CR, 2010 WL 2638146, at *1 (Tex. App.—Tyler June 30, 2010, pet. ref'd) (mem. op., not designated for publication). A trial court does not abuse its discretion when its decision is within the zone of reasonable disagreement. *Id.* Further, the trial court's decision will be upheld on appeal if it is correct on any theory of law applicable to the case. *Id.*

Jury argument must fall within one of four general areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to arguments of opposing counsel; and

13

(4) pleas for law enforcement. *Landry v. State*, 706 S.W.2d 105, 111 (Tex. Crim. App.1985), *cert. denied*, 510 479 U.S. 871, 107 S. Ct. 242, 93 L. Ed. 2d 167 (1986). When the State's jury argument exceeds the permissible bounds, it will not constitute reversible error unless, in light of the entire record, the argument is extreme or manifestly improper, violates a mandatory statute, or injects new facts harmful to the accused in the proceedings. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). The remarks must have been a willful and calculated effort by the State to deprive an appellant of a fair and impartial trial. *Id.* In most instances, an instruction to disregard the remarks will cure the error. *Id.* Only offensive or flagrant error warrants reversal when there has been an instruction to disregard. *Id.*

To preserve error on improper jury argument, a defendant must object to the prosecutor's argument and obtain an adverse ruling. *See Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). Generally, this requires a timely and specific objection, a request for an instruction to disregard the improper argument, and a motion for mistrial. *See id.* This sequence is not essential, as a request for an instruction to disregard is required only if said instruction would cure the error. *See id.* However, a motion for mistrial is an essential prerequisite to preserving the complaint for appeal. *See id.*

**Analysis**

Appellant argues that the prosecutor's statement that Appellant would "turn around laughing in our face and do it again" constituted improper jury argument that requires reversal of his conviction. The statement in question was made in the State's final summation:

> All those affirmative links are there. I'm not going to go through each one again painstakingly. I just need for you to find him guilty because he is guilty, and get him out of here. We do not need him at the 59 Hotel and you don't need to give him the confidence that he can turn around laughing in our face and do it again. Find him guilty because he is guilty and the Judge will punish him. Thank you.

Appellant's trial counsel objected to the argument. The trial court instructed the jury to disregard the argument, but Appellant did not move for a mistrial. Thus, he failed to preserve error in regard to this complaint. *See id.*

Moreover, had Appellant preserved error, the result would be the same. Assuming without deciding that the argument was improper, it would be nonconstitutional error subject to harm analysis pursuant to Rule 44.2(b) of the rules of appellate procedure. TEX. R. APP. P. 44.2(b);

14

*Turner*, 2010 WL 2638146, at \*1.  An error that does not affect substantial rights must be disregarded.  TEX. R. APP. P. 44.2(b).  A substantial right is affected when the error has a "substantial and injurious effect or influence in determining the jury's verdict."  *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  In *Mosely v. State*, the court of criminal appeals considered three factors in evaluating improper arguments: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

Here, the severity of the misconduct was not great because it was an isolated comment, was not overly emphasized, and was made in the context of an otherwise proper plea for law enforcement.  *See Harris v. State,* 122 S.W.3d 871, 888 (Tex. App.—Fort Worth 2003, pet. ref'd) ("An argument constitutes a proper plea for law enforcement if it urges the jury to be the voice of the community ...."); *see also Smith v. State,* 114 S.W.3d 66, 72 (Tex. App.—Eastland 2003, pet. ref'd) (argument to jury to get defendant off streets held to be proper plea for law enforcement).  Moreover, the judge promptly instructed the jury to disregard the argument and we presume the jury followed this instruction.  *See Coble v. State*, 330 S.W.3d 253, 293 (Tex. Crim. App. 2010).  As discussed above, the evidence supporting Appellant's guilt was substantial.  Under these circumstances, we conclude that the State's argument was not so inflammatory that the trial court's instruction to disregard could not cure the harm or that the argument was so offensive or flagrant as to render the trial fundamentally unfair.  *See Mosley*, 983 S.W.3d at 259; *see also Wesbrook*, 29 S.W.3d at 115.  Appellant's second issue is overruled.

## DISPOSITION

Having overruled Appellant's three issues, we *affirm* the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered December 31, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

15



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 31, 2019**

**NO. 12-18-00314-CR**

**ZACOVEY DION GIBSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 159th District Court
of Angelina County, Texas (Tr.Ct.No. 2018-0042)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*