**Eric Raynall BROWN, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–06–00218–CR.**

Court of Appeals of Texas, Eastland.

Sept. 13, 2007.

Discretionary Review Refused
Jan. 16, 2008.

---

Crim. Dist. Atty's Office, Abilene, for appellee.

Panel consists of WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

The jury convicted Eric Raynall Brown of possession of cocaine with the intent to deliver and assessed his punishment at twenty years confinement in the Texas Department of Criminal Justice, Institutional Division. We affirm.

### I. Background Facts

Abilene police officers executed a search warrant for a residence in Abilene, Texas. Eric Raynall Brown was the only person present and was in the front room of the house. The police officers found marihuana and traces of cocaine in the front room. They strip-searched Brown and found 2.5 grams of crack cocaine hidden in his underwear. They searched the remainder of the house and found 48.84 grams of crack cocaine and 37.39 grams of cocaine powder in a vacuum cleaner that was in a closet in a back room. Brown was indicted for two counts of possession with intent to deliver and two counts of simple possession. The jury found Brown guilty of possession of four grams or more, but less than 200 grams, of cocaine with the intent to deliver and assessed Brown's punishment at twenty years confinement.

### II. Issues

Brown challenges his conviction with three issues. Brown argues that the magistrate erred by issuing a search warrant because the supporting affidavit was insufficient, that the evidence is legally and factually insufficient to support the jury's verdict, and that the trial court erred by not sua sponte providing the jury with a

Eric Copeland, Abilene, for appellant.

James Eidson, District Attorney, Crim. Dist. Atty's Office, Patricia Dyer, Asst.

reasonable doubt instruction when the State offered evidence of an extraneous offense during the guilt/innocence phase of his trial.

### III. *Analysis*

#### A. *Was the Search Warrant Issued Upon Sufficient Basis?*

Brown argues that the magistrate erred by issuing a search warrant because the supporting affidavit did not provide a substantial basis for concluding that a search would uncover evidence of wrongdoing and that, because the search warrant was improperly issued, the trial court erred when it denied his motion to suppress.

#### 1. *Standard of Review.*

A magistrate's decision to issue a search warrant is subject to a deferential review, *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex.Crim.App.2004), and must be affirmed so long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *State v. Bradley*, 966 S.W.2d 871, 873 (Tex.App.-Austin 1998, no pet.). Judicial review must take into account that many warrants are issued on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than that used in formal legal proceedings. *Illinois v. Gates*, 462 U.S. 213, 235–36, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Probable cause to support the issuance of a search warrant exists when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises at the time the warrant is issued. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim.App.1986). When the sufficiency of a search warrant affidavit to show probable cause is challenged, we are limited to the "four corners" of the affidavit. *See Massey v. State*, 933 S.W.2d 141, 148 (Tex.

Crim.App.1996). Reasonable inferences may be drawn from the affidavit, and the affidavit must be interpreted in a realistic manner. *Lagrone v. State*, 742 S.W.2d 659, 661 (Tex.Crim.App.1987).

#### 2. *The Search Warrant Affidavit.*

Officer Tommy Pope executed an affidavit in which he swore that Brown possessed cocaine in a specified residence in Abilene. Officer Pope stated that his belief was based upon the following:

That just prior to making this application for this search warrant your affiant has received information from a confidential informant whose identity must remain a secret for security reasons. Your affiant knows this same confidential informant to be credible, reliable, and trustworthy and this belief is based on the following set out facts:

That this same confidential informant has provided information to your affiant in the past that has led to the arrest of at least 5 drug offenders.

That this same confidential informant is employed in a lawful occupation within the community.

That this same confidential informant has voluntarily admitted the informant's own prior abuse of drugs to your affiant, however, this informant no longer condones the abuse of drugs.

That this same confidential informant is supplying information to your affiant on a voluntary basis, and no deals or promises of any kind have been made to the informant by your affiant.

Although your Affiant has known this confidential informant for a period of less than 2 years, this same confidential informant has supplied your Affiant with information in reference to criminal activity that has always proven true and correct.

That within the past 48 hours this same confidential informant has been inside the above described suspected place and observed the suspected party, Eric Raynall Brown in possession of a quantity of off-white rock-like substance that the "suspected Party" purported to be crack cocaine.

That this same confidential informant believes the same off-white rock-like substance to be crack cocaine.

*3. Reliance on a Confidential Informant.*

■ Officer Pope's affidavit was not based upon personal knowledge but upon statements made to him by a confidential informant. This does not foreclose a finding of probable cause. An affidavit may be based on hearsay information so long as the magistrate is informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were and some of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable. *Aguilar v. State,* 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *see also Gates,* 462 U.S. at 241–42, 103 S.Ct. 2317 (affidavit is not insufficient merely because it relies on hearsay "so long as a substantial basis for crediting the hearsay is presented" (quoting *Jones v. United States,* 362 U.S. 257, 269, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960))).

Brown argues that Officer Pope's affidavit was insufficient because it did not provide sufficient information to evaluate the basis of the confidential informant's knowledge or the veracity of his information. We disagree. The magistrate knew that the informant's knowledge was based upon:

- having been in the residence within the last 48 hours;
- having seen Brown in the residence and in possession of an off-white rock-like substance; and
- having heard Brown claim that this substance was crack cocaine.

The affidavit did not explain the informant's familiarity with crack cocaine, but the Texas Court of Criminal Appeals has held that an informant's statement that he saw a white powder substance that the accused claimed was speed was sufficient to support a conclusion that speed was probably present. *Winkles v. State,* 634 S.W.2d 289, 299 (Tex.Crim.App.1981). Consequently, the confidential informant's statement that he saw an off-white rock-like substance in Brown's possession that Brown claimed to be crack cocaine is sufficient basis to justify a search warrant.

■ The magistrate knew that the informant's veracity or reliability was based upon:

- having provided information that led to the arrest of at least five drug offenders;
- being lawfully employed;
- providing the information voluntarily and without any promise or deal; and
- having always provided true and correct information.

Evidence that the informant had previously provided reliable information is sufficient to establish the informant's veracity. *See Avery v. State,* 545 S.W.2d 803, 804 (Tex.Crim.App.1977). So too is evidence that the informant's information had previously led to the arrest of several other individuals. *Blake v. State,* 125 S.W.3d 717, 726 (Tex.App.-Houston [1st Dist.] 2003, no pet.).

Brown relies on *State v. Davila,* 169 S.W.3d 735 (Tex.App.-Austin 2005, no pet.); *Davis v. State,* 144 S.W.3d 192 (Tex. App.-Fort Worth 2004, pet. ref'd); and *Caldarera v. State,* 504 S.W.2d 914 (Tex.

Crim.App.1974), in support of his contention that Officer Pope's affidavit was insufficient to establish probable cause. These cases are distinguishable.

In *Davila*, the search warrant affidavit stated that the affiant had received information from a confidential informant regarding cocaine and marihuana being possessed at a residence. *Davila*, 169 S.W.3d at 738. The affidavit also stated that "[t]he aforementioned [informant] has provided information regarding narcotics trafficking and transactions to your Affiant in the past." *Id.* The affidavit did not provide any other details about the informant. The affidavit did not state any facts demonstrating the accuracy of the prior information or indicating whether the informant had seen the alleged contraband. Officer Pope's affidavit stated that the informant's information had always been accurate, that it had led to at least five arrests, and that the informant had personally seen an off-white rock-like substance in Brown's possession.

In *Davis*, the search warrant affidavit stated that the confidential informant had never given information to a law enforcement agency before and that the informant was familiar with the packaging and characteristics of marihuana because he had been arrested over six years ago on a drug charge. The affidavit did not state whether the drug charge involved marihuana or some other drug and provided no information that the informant knew what marihuana looked like or how it was packaged. *Davis*, 144 S.W.3d at 198. Officer Pope testified that the informant had provided reliable information in other drug cases, that the informant described the substance he observed in Brown's possession, and that the informant stated that Brown described it as crack cocaine.

In *Caldarera*, the search warrant affidavit was based upon information from a first-time informant. 504 S.W.2d at 915. The only indica of reliability was a statement that the informant did not have a record with the Austin Police Department. The court held that this alone was insufficient. *Id.* at 916. Officer Pope's informant was not a first-time informant and had always provided accurate information in the past.

Finally, Brown argues that, because the police did not corroborate the informant's information and because there was no indication that the five arrests the informant helped procure resulted in convictions or drug seizures, the magistrate lacked sufficient basis to find probable cause. The Supreme Court has indicated that our review should not be hypertechnical. *Gates*, 462 U.S. at 230, 103 S.Ct. 2317. Certainly, corroboration and successful prosecutions are relevant factors, but to agree with Brown would essentially mandate that they be present in each case.[1] We believe such a requirement is inconsistent with the analysis in *Gates*.

Viewing the totality of the circumstances reflected in Officer Pope's affidavit, we conclude that the affidavit contained sufficient facts and circumstances to provide the magistrate with a substantial basis for concluding there was a fair probability that

1. Brown contends that *Elardo v. State*, 163 S.W.3d 760 (Tex.App.-Texarkana 2005, pet. ref'd); *Eatmon v. State*, 738 S.W.2d 723 (Tex. App.-Houston [14th Dist.] 1987, pet. ref'd); and *Cassias v. State*, 719 S.W.2d 585 (Tex. Crim.App.1986), stand for the proposition that the informant's information must be corroborated by independent police work. We do not read those cases to so hold. Corroboration—by any means—is relevant to an informant's veracity and may allow a magistrate to reach a conclusion it would not otherwise make, but we do not read any of these decisions to hold that corroboration by independent police work is always required.

a search would uncover evidence of wrongdoing. Therefore, probable cause existed to issue the search warrant, and the trial court did not err in denying Brown's motion to suppress evidence. Issue one is overruled.

### B. Was the Evidence of Possession With the Intent to Deliver Sufficient?

■■■■ Brown challenges the legal and factual sufficiency of the evidence to support his conviction for possession with the intent to deliver. To determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex.Crim.App.2000). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex.Crim.App. 2006); *Johnson v. State*, 23 S.W.3d 1, 10–11 (Tex.Crim.App.2000). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414–15. The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. Tex.Code Crim. Proc. Ann. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

### 1. Possession.

■■■■ To establish possession, the State must prove that Brown exercised control, management, or care over the cocaine and that he knew it was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex.Crim.App. 2006). The State must also establish that Brown's connection with the cocaine was more than fortuitous. Texas courts utilize an affirmative links rule that is designed to protect innocent bystanders from conviction merely because of their proximity to someone else's drugs. *Id.* at 161–62. Mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control. However, presence or proximity, when combined with other evidence, direct or circumstantial, may be sufficient. *Id.*

Some of the affirmative links that may establish possession include: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex.App.-Houston [14th Dist.] 2005, no pet.). It is not the number of links that is dispositive but, rather, the logical force of all of the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162.

■■■■ When the police executed the search warrant, Brown was in the living

room and was the only person in the house. He did not rent or own the house and had no personal effects in it. The police found 2.5 grams of cocaine hidden in a baggie in Brown's underwear. The police also found digital scales; a military flak jacket; a freshly smoked cigar butt containing marihuana; a usable quantity of marihuana on an entertainment center shelf; an off-white substance on a ceramic plate under a living room chair, in the living room carpet, and on a kitchen counter; powder and crack cocaine in the zippered bag of a vacuum cleaner; and an opened box of plastic sandwich bags in the kitchen. Except for the residual cocaine particles, the cocaine was contained in sandwich bags like those from this box.

A DPS forensic scientist, William T. Todsen, examined the substances seized by the police. Todsen testified that the vacuum cleaner contained 48.84 grams of cocaine base (crack cocaine) and 37.39 grams of cocaine salt (cocaine powder) and that the baggie found in Brown's underwear contained 2.5 grams of crack cocaine. Officer Pope testified that the crack cocaine found in the vacuum cleaner bag was similar in texture, firmness, and quality as the crack cocaine on Brown. Todsen testified that the crack cocaine found on Brown and in the vacuum cleaner bag were qualitatively similar. The crack cocaine in the vacuum cleaner was 68% pure, and the crack cocaine on Brown was 70% pure. This difference was well within the measuring equipment's margin of error.

Brown primarily directs our attention to the fact that he was arrested in the front room of the house but that the majority of the cocaine was found in a vacuum cleaner in a closet in the back of the house. Brown argues that this cocaine was not in close proximity or accessible to him and that none of the drug paraphernalia was found on his person or with his belongings.

These factors are clearly relevant but are insufficient to overcome a jury's verdict. When the evidence is reviewed in the light most favorable to the jury's verdict, it is legally sufficient because there was evidence of a number of affirmative links. Brown was the only person present in the house when the search warrant was executed. The police found crack cocaine hidden on Brown that was similar in composition and appearance to the crack cocaine in the vacuum cleaner bag. While the vacuum cleaner was in a separate room, the house was not large. Lieutenant Shane Burks testified that the house was approximately 1,000 square feet. Although the record does not indicate the precise distance between the front room and the back room, it is apparent that this distance was not great. Furthermore, the police also found drug residue and drug paraphernalia—much of it open and obvious—in several places throughout the house. This evidence is sufficient to permit a reasonable juror to determine beyond a reasonable doubt that Brown possessed all of the cocaine found in the house.

When the evidence is viewed in a neutral light, it is also factually sufficient. Brown correctly notes that he was not in physical possession of the cocaine found in the vacuum cleaner and that there was no evidence of some of the affirmative links listed in *Olivarez,* 171 S.W.3d at 291. There is no set formula for the number of links that must be shown. There was evidence of several affirmative links. This evidence is not so weak as to indicate that the jury's verdict is clearly wrong or manifestly unjust or that the verdict is against the great weight and preponderance of the conflicting evidence.

### 2. Intent to Deliver.

■ Intent to deliver can be proven by circumstantial evidence, *Rhodes v. State,* 913 S.W.2d 242, 251 (Tex.App.-Fort

Worth 1995), *aff'd*, 945 S.W.2d 115 (Tex. Crim.App.1997), and by expert testimony. *Bryant v. State*, 997 S.W.2d 673, 675 (Tex. App.-Texarkana 1999, no pet.). Courts have considered several factors in determining intent, including: (1) the nature of the location where the defendant was arrested, (2) the quantity of drugs the defendant possessed, (3) the manner of packaging of the drugs, (4) the presence or absence of drug paraphernalia for use or sale, (5) whether the defendant possessed a large amount of cash in addition to the drugs, and (6) the defendant's status as a drug user. *Jordan v. State*, 139 S.W.3d 723, 726 (Tex.App.-Fort Worth 2004, no pet.).

 In *Jordan*, the defendant was arrested with a baggie containing 1.65 grams of cocaine powder, 1.94 grams of heroin, and .45 grams of crack cocaine. *Id.* at 725. The defendant was convicted of intent to deliver largely on the testimony of police officers who told the jury that he was arrested in a high crime area where drug houses were typically located, that he was carrying more drugs than a typical user would possess, and that his drugs were packaged in capsule form and in individual bags that indicated an intent to sell. *Id.* at 725–26. The court affirmed that conviction.

There was similar testimony in this case. Lieutenant Burks and Officer Pope both testified that, in their experience, a user would possess one gram or less of cocaine, and Officer Pope testified that the 2.5 grams found on Brown alone indicated an intent to deliver. There was also evidence of marketing. The police found digital scales and an opened box of plastic sandwich bags in the house. The cocaine found on Brown and the cocaine found in the vacuum cleaner were in bags just like those from the box. Brown testified that he had been in Abilene for several weeks but did not have a stable job. Despite this, Brown had $93 in cash on him when he was arrested.

In *Jordan*, one justice dissented and argued that the evidence was not inconsistent with simple possession. The dissenting justice pointed to the fact that the defendant could have acquired his drugs by spending his entire paycheck. The dissenting justice also noted that there was no evidence that the defendant was carrying any empty baggies or capsules, that he did not exhibit any intent to deliver, and that the evidence did not distinguish between the drugs he possessed for his own use as opposed to those he held for delivery. *Id.* at 727–30. In this case, the police did find empty baggies, Brown was unemployed, and there was evidence that Brown did not use crack cocaine. Officer Pope testified that the only way to ingest crack cocaine is to smoke it. He testified that in his opinion Brown was selling crack cocaine because he did not have anything in his possession or in the house with which to smoke crack cocaine and he did not have any calluses on his hands from using a crack pipe. Conversely, there was evidence—in the form of a smoking blunt—that Brown was using marihuana just before the police arrived.

This evidence is both legally and factually sufficient to support the jury's verdict that Brown possessed the cocaine with the intent to deliver. Issue two is overruled.

*C. Did the Trial Court Err by Not Sua Sponte Providing a Reasonable Doubt Instruction When Evidence of Extrinsic Acts Was Offered During the Guilt/Innocence Phase of the Trial?*

 Brown argues that, when the State introduced evidence during the guilt/innocence phase of his trial that he possessed or used marihuana, this was evidence of an extraneous offense and that

the trial court was required to sua sponte provide the jury with a reasonable doubt instruction. It is well settled that, if extraneous offense evidence is introduced during the guilt/innocence phase of trial and if a defendant requests a reasonable doubt instruction, the trial court must provide one. *See Ex parte Varelas,* 45 S.W.3d 627, 631 (Tex.Crim.App.2001). It is equally well settled that, if extraneous evidence is offered during the trial's punishment phase, the trial court must sua sponte provide a reasonable doubt instruction. *See Huizar v. State,* 12 S.W.3d 479, 484–85 (Tex.Crim.App.2000). Several intermediate courts have considered the trial court's obligation when extraneous offense evidence is offered during the guilt/innocence phase of trial but the defendant does not request an instruction, and these courts have reached conflicting results.[2] The Texas Court of Criminal Appeals has not yet addressed this issue.

■ The State argues that we need not add our voice to this discussion because the marihuana evidence was same transaction contextual evidence and, therefore, that no reasonable doubt instruction was required. Same transaction contextual evidence is background evidence admitted to show the context in which the criminal act occurred. It is deemed admissible where several crimes are intermixed or blended with one another or connected so that they form an indivisible criminal transaction and where full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others. *Mayes v. State,* 816 S.W.2d 79, 86 n. 4 (Tex.Crim.App.1991).

■ Necessity is a key element when determining whether same transaction contextual evidence is admissible. *See Rogers v. State,* 853 S.W.2d 29, 33 (Tex. Crim.App.1993) (only if the facts and circumstances of the instant offense would make little or no sense without also bringing in the same transaction contextual evidence should the same transaction contextual evidence be admitted). It is not readily apparent why evidence that marihuana was in the house was necessary to the State's case for possession of cocaine with the intent to deliver.[3] We need not, however, resolve that question because the same transaction contextual evidence rule determines whether extraneous evidence is admissible. It does not speak to the trial court's duty once the evidence is admitted.

We believe the analysis offered by the Austin Court in *Wright,* 212 S.W.3d 768, is

---

2. Compare *Rodgers v. State,* 180 S.W.3d 716, 723–24 (Tex.App.-Waco 2005, no pet.) (*Huizar* applies to guilt/innocence phase of trial); *Chapa v. State,* No. 04–02–00346–CR, 2003 WL 1025148, at *1–2 (Tex.App.-San Antonio March 12, 2003, pet. ref'd) (not designated for publication) (assumes *Huizar* applies to guilt/innocence phase but did not find requisite harm); *Arnold v. State,* No. 05–01–01733–CR, 2002 WL 31569537, at *1 (Tex.App.-Dallas Nov.20, 2002, no pet.) (not designated for publication) (in response to Anders brief noted that whether *Huizar* applies to the guilt/innocence phase was an arguable issue); with *Wright v. State,* 212 S.W.3d 768, 778–79 (Tex. App.-Austin 2006, pet. ref'd) (*Huizar* does not apply to the guilt/innocence phase of trial); *Allen v. State,* 180 S.W.3d 260, 266 (Tex.App.-Fort Worth 2005, no pet.) (same); *Rodriguez v. State,* 137 S.W.3d 228, 231 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (same); *Gilbert v. State,* No. 14–02–00727–CR, 2003 WL 22176625, at *4 (Tex.App.-Houston [14th Dist.] Sept. 23, 2003, no pet.) (not designated for publication) (same); *Salazar v. State,* No. 07–01–00389–CR, 2002 WL 246642, at *3 (Tex.App.-Amarillo Feb.21, 2002, pet. ref'd) (not designated for publication) (same).

3. In *Rogers,* the court found that evidence concerning marihuana was not necessary to the jury's understanding of the offenses of burglary and possession of methamphetamine and, therefore, was not admissible as same transaction contextual evidence. 853 S.W.2d at 34.

compelling. The court noted that the *Hui-zar*-required reasonable doubt instruction is based upon TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon 2006), which is statutorily prescribed law applicable to the case at the penalty stage of trial. *Id.* at 779 (citing *Huizar*, 12 S.W.3d at 483). The court further noted that the statute's language is specifically restricted to the punishment phase of the trial and that the required instruction would make no sense prior to a defendant's conviction. The court concluded, therefore, that *Huizar* did not apply to the guilt/innocence phase of the trial. *Id.* We agree. Consequently, we find that the trial court was not obligated to sua sponte provide a reasonable doubt instruction during the guilt/innocence phase of the trial and overrule Brown's third issue.

## IV. *Holding*

The judgment of the trial court is affirmed.