# NO. 12-22-00283-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *HENRY AYALA HENDRIX,* *APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Henry Ayala Hendrix appeals his conviction for possession with intent to deliver methamphetamine. In two issues, Appellant contends the trial court erroneously failed to suppress evidence and challenges the sufficiency of the evidence to support his conviction. We affirm.

## BACKGROUND

Appellant was charged by indictment with possession of a controlled substance, namely methamphetamine, with the intent to deliver in the amount of more than four hundred grams. Appellant pleaded "not guilty," and the matter proceeded to a jury trial. Ultimately, the jury found Appellant "guilty." At the punishment phase, Appellant pleaded "true" to the enhancement paragraphs. The jury sentenced Appellant to sixty-five years imprisonment. The trial court entered judgment in accordance with the jury's verdict. This appeal followed.

## SUPPRESSION OF EVIDENCE

In his first issue, Appellant urges the trial court should have suppressed the evidence obtained pursuant to a warrant. Specifically, he contends that because the warrant was not

admitted into evidence, the State failed to prove (1) it obtained the evidence, namely the methamphetamine, pursuant to a valid warrant, and (2) the evidence was seized legally.

To preserve error regarding illegally seized evidence, the defendant must file a motion to suppress and obtain a ruling thereon or timely object when the state offers the evidence at trial. *Ratliff v. State*, 320 S.W.3d 857, 860 (Tex. App.–Fort Worth 2010, pet. ref'd). If a motion to suppress has not been ruled on when the evidence is offered at trial, the defendant must object when the evidence is offered to preserve error. *Sanders v. State*, 387 S.W.3d 680, 686 (Tex. App.–Texarkana 2012, pet. struck). If the defendant waits until the state offers the evidence at trial, the defendant must object to the evidence before a witness gives substantial testimony about it. *Ratliff*, 320 S.W.3d at 861. A ruling obtained after an officer has testified before the jury regarding facts sought to be suppressed does not preserve error since the ruling is untimely. *Sanders*, 387 S.W.3d at 686. A narrow exception arises when the trial court carries the motion with trial and makes specific comments directing the defendant to wait until all the evidence is presented before obtaining a ruling from the trial court. *Garza v. State*, 126 S.W.3d 79, 84–85 (Tex. Crim. App. 2004); *see Sanders*, 387 S.W.3d at 686.

The record indicates Appellant did not file a pretrial motion to suppress. Therefore, to preserve this issue for our review, Appellant had to object when the evidence was offered at trial. *See Ratliff*, 320 S.W.3d at 861. Instead of objecting, Appellant affirmatively stated "no objection" when the seized items, including a shotgun, a jar containing individual "8-Balls" of methamphetamine, a package containing more than 400 grams of methamphetamine, and a rifle with magazine and ammunition, were offered into evidence. Appellant also stated he had "no objection" when the State offered a flash drive containing photographs of his travel trailer, which law enforcement searched, and its contents. And Appellant failed to object when the State published those photos as a witness testified to their contents. Nor did he object when the lab report, showing that the items seized included 495.2 grams of methamphetamine, was offered. Under these circumstances, we conclude Appellant failed to preserve this issue for appellate review. *See Sanders*, 387 S.W.3d at 686; *see also Ratliff*, 320 S.W.3d at 861; *Dudley v. State*, No. 12-15-00263-CR, 2016 WL 3475626, at *2 (Tex. App.—Tyler June 24, 2016, no pet.) (mem. op., not designated for publication).[1] We overrule Appellant's first issue.

---

[1] The jury charge included an instruction in compliance with Texas Code of Criminal Procedure Article 38.23 informing the jury that it should not consider illegally obtained evidence and instructing it to find Appellant

## EVIDENTIARY SUFFICIENCY

In his second issue, Appellant challenges the sufficiency of the evidence to support his conviction. Specifically, Appellant claims the State failed to prove that he intended to deliver the methamphetamine.

### Standard of Review

The ***Jackson v. Virginia***[2] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See **Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson***, 443 U.S. at 315-16, 99 S. Ct. at 2686-87; *see also **Escobedo v. State***, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S. W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186. This requires the reviewing court to defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. ***Brooks***, 323 S.W.3d at 899; *see **Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789. A "court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution." ***Jackson***, 443 U.S. at 326, 99 S. Ct. at 2793. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See **Tibbs v. Florida***, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed 2d 642 (1982).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See **Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App.

---

"not guilty" if the methamphetamine was unlawfully obtained. *See* Tex. Code of Crim. Proc. Ann. art. 38.23 (West 2018). However, requesting and receiving this jury instruction is not sufficient to preserve the suppression issue for appellate review. *See **Holmes v. State***, 248 S.W.3d 194, 196 (Tex. Crim. App. 2008).

[2] 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979).

1997).  Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or unnecessarily restrict the state's theories of liability, and adequately describes the particular offense for which the defendant is tried."  *Id*.

## Applicable Law

A person commits an offense if that person knowingly possesses with intent to deliver a controlled substance listed in Penalty Group 1.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2017).  Methamphetamine is a controlled substance listed in Penalty Group 1.  *Id.* § 481.102(6) (West Supp. 2022).  To establish possession, the State must prove that the accused (1) exercised actual care, custody, control, or management over the substance and (2) was conscious of his connection with it and knew what it was.  *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West Supp. 2022).

Intent to deliver can be proven by either circumstantial evidence or by expert testimony. *Rhodes v. State,* 913 S.W.2d 242, 251 (Tex. App.—Fort Worth 1995), *aff'd,* 945 S.W.2d 115 (Tex. Crim. App. 1997) (circumstantial evidence); *Bryant v. State,* 997 S.W.2d 673, 675 (Tex. App.—Texarkana 1999, no pet.) (expert testimony).  Courts have considered several factors in determining intent, including: (1) the nature of the location where the defendant was arrested, (2) the quantity of drugs the defendant possessed, (3) the manner of packaging of the drugs, (4) the presence or absence of drug paraphernalia for use or sale, (5) whether the defendant possessed a large amount of cash in addition to the drugs, and (6) the defendant's status as a drug user. *Jordan v. State,* 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 2004, no pet.).

## Analysis

Detective Aneas Sutton testified that he is a detective for a special investigations unit and a member of the Texas Anti-Gang Center (TAG).  He conducts narcotics-based investigations, weapons-based investigations, and gang-based investigations and other gang related crime. Sutton testified that the general selling size of methamphetamine is between one and 3.5 grams, which is commonly referred to as an "8-ball."  In his experience, a gram of methamphetamine sells for between fifty and seventy-five dollars and an "8-ball" can cost between $100-$150. According to Sutton, a single serving of methamphetamine is approximately one gram, and an "8-ball" is "for one person over a period of time."  How long it would take a user to go through

an "8-ball" depends on the person. Some users may use an "8-ball" in a day, akin to someone who drinks alcohol consuming a six-pack in a day, while others may use it for two or three days.

Sutton testified that he was involved in "The Morningside Operation," an investigation into a large group of people supplying narcotics, firearms, paraphernalia, and ammunition. After observing Appellant for a matter of weeks, Sutton believed Appellant to be "an ounce-level dealer . . . [p]robably getting kilos in, breaking them down to ounces and grams and selling them that way." Eventually, the investigation produced enough evidence to support the issuance of a search warrant. Sutton testified that he assisted with the execution of the warrant. In doing so, he recovered a 12-gauge shotgun, an AK-47 rifle, a plastic bag of suspected black tar heroin, and a bag of suspected marijuana. He also photographed methamphetamine recovered by then Special Agent Glenn Davenport. [3]

Detective Jerry Ramsey testified that he is also a member of the special investigations unit and TAG. He photographed the scene and collected evidence when the search warrant was executed on Appellant's home. Ramsey's photographs were admitted into evidence and published to the jury. Included in those images were several pieces of drug paraphernalia, including those used to distribute and sell drugs such as a cutting agent and individual baggies. Also admitted during Ramsey's testimony were the following pieces of evidence: a 12-gauge shotgun, a jar of individually bagged "8-balls" weighing 3.5 grams each, a "kilo" of methamphetamine found wrapped in electrical tape, an AK-47 rifle, and a 30-round magazine.

Micaela Stewart, a forensic scientist with the Texas Department of Public Safety, analyzed the drugs found in Appellant's home. Stewart testified that the "kilo" contained 495.02 grams of methamphetamine. She further explained that methamphetamine is a controlled substance in Penalty Group 1.

Davenport was the lead agent in the Morningside Operation. After surveilling the Morningside area, conducting traffic stops, and interviewing suspected drug users, TAG was able to start "identifying things, people, places." Some suspects agreed to act as confidential informants in lieu of facing criminal charges. Davenport testified that Appellant's name came up in several interviews. And those interviews lead law enforcement to believe Appellant was selling methamphetamine and may have been part of the cartel. Davenport used a confidential

---

[3] At the time of trial, Davenport had become a Texas Ranger. However, at the time of the investigation, he was employed by the criminal investigations division and was a member of TAG.

informant to buy methamphetamine from Appellant in a controlled buy. The informant first purchased 8.8 grams of methamphetamine and then purchased 4.17 grams. As a result, Davenport obtained a search warrant. TAG executed search warrants on two other residences the same day they executed the search warrant on Appellant's residence. Davenport testified that a "plug" is "basically your supplier for narcotics" and that Appellant was "the plug in Morningside."

Davenport was asked to examine the individually wrapped "8-balls" and opined that the clearness of the methamphetamine indicated that it was "a high potency methamphetamine" that had not been "cut" to make it stretch further. He explained that when a cutting agent is added to the drug, it stretches the drug out further, increasing the profit for the seller. Davenport further testified that law enforcement found "MSM or cut" at the house during the search. When asked about the AK-47, Davenport testified that the gun had previously been on another person's Facebook page. In his opinion and experience, he believed the rifle had been traded to Appellant for drugs. Davenport further believed the reason no cash was found at Appellant's home was because Appellant had just renewed his supply of drugs and spent "quite a bit of cash on that." A kilo of methamphetamine would have likely cost Appellant approximately $6,500.

The evidence at trial showed that Appellant possessed a large quantity of methamphetamine – 495 grams – when a typical user would only possess as much as 3.5 grams at a time. In addition, Appellant possessed items typically used for selling and distributing drugs, such as individual baggies, cutting agent, and individually wrapped single servings. Furthermore, Appellant sold methamphetamine to a confidential informant on two separate occasions. Therefore, viewing the evidence in the light most favorable to the verdict, a rational jury could have found that Appellant possessed the methamphetamine with intent to deliver. *See* ***Brown v. State***, 243 S.W.3d 141, 150 (Tex. App.—Eastland 2007, pet. ref'd); *see also* ***Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186. Because the evidence is sufficient to support Appellant's conviction, we overrule his second issue.

## DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the trial court's judgment.

6

**GREG NEELEY**
Justice

Opinion delivered October 18, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 18, 2023**

**NO. 12-22-00283-CR**

**HENRY AYALA HENDRIX,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-0795-21)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*