

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00239-CR

_____

SAMMIE MOODY III, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. DC30-CR2024-1207-1

---

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellant Sammie Moody III appeals his conviction for engaging in organized criminal activity. *See* Tex. Penal Code Ann. § 71.02. In his sole issue, Moody argues that the trial court erred by denying his motion to suppress evidence that was obtained pursuant to a search warrant that he claims was not supported by probable cause. Because we will conclude that the magistrate who signed the search warrant had a substantial basis for determining that probable cause existed, we will affirm.

### II. BACKGROUND

On September 20, 2024, James Carpenter, a Texas peace officer, signed an "Affidavit for Search and Arrest Warrant." In that affidavit,[1] Carpenter described being contacted by a confidential informant who advised him that two individuals—Moody and Tiffany Michele Crosby—were selling fentanyl in the Wichita Falls area. The affidavit specified the premises to be searched (a hotel room), stated Carpenter's belief that Moody and Crosby were possessing and selling fentanyl at the premises, detailed Carpenter's experience and training, described the information relayed by the confidential informant to Carpenter relating to Moody's and Crosby's possession and selling of fentanyl, mentioned Carpenter's attempts to corroborate the information provided by the informant, and noted Carpenter's past dealings with the informant.

---

[1]We will detail the affidavit more fully in our discussion section. *See* Tex. R. App. P. 47.1.

The same day that Carpenter signed the affidavit, a magistrate signed a search warrant authorizing the search of the hotel room described in the affidavit. During the search of that room, officers seized, among other things, a plastic bag containing 138.9 grams of fentanyl and a room receipt that listed the room in Moody's name.

Moody was later indicted for engaging in organized criminal activity. The indictment alleged that, on or about September 20, 2024, Moody, "with the intent to establish, maintain, or participate in a combination or in the profits of a combination, the combination consisting of the defendant and Leyanna Rodriguez and Tiffany Crosby, . . . intentionally and knowingly commit[ted] the offense of unlawful possession of, with intent to deliver, . . . Fentanyl, in an amount of 4 grams or more but less than 200 grams."

Moody subsequently filed a motion to suppress the evidence obtained pursuant to the search warrant. In his motion, Moody argued that Carpenter's affidavit was "insufficient to support probable cause." After considering the motion to suppress by written submission, the trial court signed an order denying it. Moody later signed a judicial confession and pleaded guilty to the underlying offense of engaging in organized criminal activity. Pursuant to a plea agreement, the trial court sentenced Moody to thirty years' confinement. This appeal followed.[2]

---

[2]The trial court's certification of Moody's right of appeal stated that this "is a plea-bargain case, but matters were raised by written motion filed and ruled on before trial and not withdrawn or waived, and the defendant has the right of appeal."

## III. Discussion

In his sole issue, Moody argues that the trial court erred by denying his motion to suppress.

### A. Applicable Law and Standard of Review

The United States and Texas Constitutions both protect against unreasonable searches and seizures.[3] *See* U.S. Const. amend IV; Tex. Const. art. I, § 9. Subject to certain exceptions, to undertake a search or a seizure, law enforcement must obtain a warrant from a judicial officer based upon a showing of probable cause. *State v. McGuire*, 689 S.W.3d 596, 602 (Tex. Crim. App. 2024); *see Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007) ("The cornerstone of the Fourth Amendment and its Texas equivalent is that a magistrate shall not issue a search warrant without first finding 'probable cause' that a particular item will be found in a particular location.").

Probable cause to support the issuance of a search warrant exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular location. *State v. Baldwin*, 664 S.W.3d 122, 130 (Tex. Crim. App. 2022). "This is a flexible, non-demanding standard." *Id.* The test

---

[3]While Moody cites to both the United States and Texas Constitutions in his brief, he does not suggest that the two provisions differ in any material way to our analysis. *See Frazier v. State*, No. 01-24-00662-CR, 2025 WL 3095500, at *2 (Tex. App.—Houston [1st Dist.] Nov. 6, 2025, no pet.) (noting, in an appeal of a denial of an appellant's motion to suppress evidence seized as a result of a search warrant, that "[t]he parties do not contend that the United States and Texas Constitutions' prohibitions on unreasonable searches and seizures differ in a way that is material to the analysis here").

for finding probable cause is whether a reasonable reading by the magistrate would lead to the conclusion that the four corners of the search-warrant affidavit provide a substantial basis for issuing the warrant. *State v. Elrod*, 538 S.W.3d 551, 557–58 (Tex. Crim. App. 2017) (citing *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012)). We are mindful that when magistrates make probable-cause determinations, they are "dealing with probabilities and not hard certainties." *Parker v. State*, 663 S.W.3d 766, 771 (Tex. Crim. App. 2022); *see Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997) ("Probable cause deals with probabilities; it requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence.").

A confidential informant may supply probable cause if he has a proven track record of providing reliable information. *Diaz v. State*, 632 S.W.3d 889, 893 (Tex. Crim. App. 2021); *Arnold v. State*, No. 02-23-00271-CR, 2024 WL 2347682, at *4 (Tex. App.—Fort Worth May 23, 2024, no pet.) (mem. op., not designated for publication). Even without a proven track record, a confidential informant's information may be reliable for other reasons, such as if it is corroborated, it is a statement against penal interest, it is consistent with other information, or it is a detailed, first-hand account. *Diaz*, 632 S.W.3d at 893; *Arnold*, 2024 WL 2347682, at *4.

We ordinarily apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019); *Moody v. State*, No. 02-25-00119-CR, 2026 WL 253455, at *2 (Tex. App.—Fort

5

Worth Jan. 30, 2026, pet. filed) (mem. op., not designated for publication). But when we review a magistrate's determination of probable cause to support a search warrant, we apply a "highly deferential" standard of review because of the Fourth Amendment's strong preference for searches conducted pursuant to a search warrant over warrantless searches. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011); *Moody*, 2026 WL 253455, at *2.

We will uphold the magistrate's probable-cause determination so long as the magistrate had a substantial basis for concluding that probable cause existed. *Elrod*, 538 S.W.3d at 557; *Moody*, 2026 WL 253455, at *2. When in doubt, we should defer to all reasonable inferences the magistrate could have made. *Baldwin*, 664 S.W.3d at 130; *Moody*, 2026 WL 253455, at *2. And we will "not invalidate a warrant by interpreting an affidavit in a hyper-technical rather than commonsense manner." *Baldwin*, 664 S.W.3d at 130; *see Moody*, 2026 WL 253455, at *2 ("A search-warrant affidavit must be read in a commonsense and realistic manner, and a magistrate may draw reasonable inferences from the facts and circumstances contained in the four corners of the affidavit.").

## B. The Search-Warrant Affidavit

In the search-warrant affidavit, Carpenter described the premises to be searched as room 208 of the Wayfarer Motel in Wichita Falls. He stated that he suspected that the premises contained fentanyl and that Moody and Crosby were in

6

charge of and in control of the premises.  Carpenter accused Moody and Crosby of being in possession of and selling fentanyl in room 208.

In the affidavit, Carpenter described his experience as a Texas peace officer and his training in narcotics investigations:

> Your Affiant, James Carpenter, is a Texas commissioned Peace Officer and has been so commissioned for over 22 years.  Your Affiant is employed by the Wichita County Criminal District Attorney and assigned, as a Narcotics Investigator, to the Drug Enforcement Division. During the time your Affiant has been assigned as a Narcotics Investigator[,] your Affiant has been responsible for several investigations of controlled[-]substances violations including Fentanyl. In addition, your Affiant has attended training in narcotics investigations including search warrant preparation, evidence collection[,] and investigations of individuals who derive substantial income from the illegal importation, manufacture, distribution, and sale of illegal controlled substances.

Carpenter then detailed his communications with a confidential informant regarding the informant's alleged knowledge of Moody's and Crosby's possessing and selling drugs in Wichita Falls and his own attempts to corroborate the informant's information:

> On 09/11/2024, your Affiant was contacted by a Confidential Informant, hereinafter called "CI" advising of two (2) individuals who were selling Fentanyl pills, disguised to look like prescription Percocet pills, in the Wichita Falls, Wichita County, Texas area.  Through training and experience, your Affiant knows these types of Fentanyl pills are small, round, blue pills with an "M" imprinted on one side and "30" imprinted on the opposite side and are typically referred to as "Percs" or "blues[."]  The CI identified the individuals as Sammie Lee MOODY III . . . and Tiffany Michele CROSBY . . . , hereinafter called "suspect(s)[,"] whether one or both, and advised the suspect(s) were in possession of and selling Fentanyl.  The CI advised that MOODY and CROSBY are in a relationship and advised that CROSBY was from the Wichita Falls area and MOODY was from the Metroplex.  The CI stated

7

that MOODY transports large quantities of Fentanyl from the Metroplex to the Wichita Falls area utilizing a gray Hyundai Sonata, bearing Texas registration VHM-8887. The CI stated that when MOODY gets to Wichita Falls, MOODY and CROSBY will stay at various motels and sell the Fentanyl pills until they run out. CI also advised that at times MOODY will become paranoid about potentially being discovered by Law Enforcement and will change motels multiple times.

On 09/16/2024, the CI contacted your Affiant and advised that MOODY was in Wichita Falls and both MOODY and CROSBY were staying in room 133 at the Catalina Motel . . . . The CI stated they personally observed the suspect(s) in possession of and selling Fentanyl from room 133 of the Catalina Motel.

On 09/17/2024, your Affiant was conducting surveillance on the Catalina Motel when a gray Hyundai Sonata, bearing Texas registration VHM-8887 was observed leaving the Catalina Motel. After observing a traffic violation, your Affiant conducted a traffic stop on the vehicle and identified the driver to be MOODY. MOODY confirmed the information your Affiant received from the CI that MOODY was staying at the Catalina Motel with CROSBY.

On 09/19/2024, your Affiant was contacted by the CI advising that MOODY and CROSBY had changed motels and were now staying in room 208 at the Wayfarer Motel . . . . The CI stated they personally observed the suspect(s) in possession of and selling a quantity of Fentanyl pills inside room 208.

Carpenter then explained why he believed the confidential informant to be credible and reliable, noting the informant's proven track record:

Your Affiant believes the CI to be credible and reliable based on the fact the CI has personally observed the suspect(s) to be in possession of and selling Fentanyl. CI is familiar with the appearance and packaging of Fentanyl pills and how Fentanyl is introduced into the human body. CI has been inside room 208 of the Wayfarer within the last 72 hours and observed the suspect(s) to be in possession of and selling Fentanyl. In the past, the CI, at the direction and supervision of your Affiant, has conducted multiple control buys of control[led] substances and each time was able to purchase the type of control[led] substance sought. The

8

CI has provided information to your Affiant that your Affiant was able to verify to be true and accurate information. CI has provided information and made statements to your Affiant against their own penal interest. CI has also provided information that has led to the arrest of three (3) different individuals on five (5) Felony charges.

At the end of his affidavit, Carpenter requested that the magistrate issue a warrant authorizing him to search room 208 and seize drugs and other evidence found there.

## C. Analysis

Here, the affidavit reflects that the confidential informant contacted Carpenter on September 11, 2024, and advised him that Moody and Crosby were selling fentanyl in the Wichita Falls area. The informant told Carpenter that Moody transports fentanyl from the Metroplex to the Wichita Falls area utilizing a vehicle, and the informant gave the make, model, color, and registration number of that vehicle. The informant also relayed to Carpenter that Moody and Crosby sold fentanyl pills at various motels in Wichita Falls. Five days later, the informant contacted Carpenter and told him that Moody and Crosby were staying in room 133 at the Catalina Motel. Notably, the informant had "personally observed the suspect(s) in possession of and selling Fentanyl from room 133."[4] Three days later, the informant again contacted

---

[4]In his brief, Moody argues that the use of the term "suspect(s)" does not specify what person or persons were observed by the informant or how many people were observed by the informant. We note, however, that the affidavit specifically stated that the informant had advised Carpenter that two individuals were selling fentanyl pills. The informant then identified those individuals—the "suspect(s)"—as Moody and Crosby. We reject Moody's hyper-technical reading of the affidavit. *See Patterson v. State*, 663 S.W.3d 155, 159–60 (Tex. Crim. App. 2022) ("Although the

Carpenter and reported that Moody and Crosby had changed hotels and that they were staying in room 208 of the Wayfarer Motel. Critically, the confidential informant told Carpenter that the informant had "personally observed the suspect(s) in possession of and selling a quantity of Fentanyl pills inside room 208."

The informant's first-hand account—particularly the personal observations that "the suspect(s)" were in possession of and selling fentanyl inside room 208—provided the magistrate with a substantial basis to find that there was a fair probability that fentanyl would be found in room 208.[5] *See Diaz*, 632 S.W.3d at 893; *Arnold*, 2024 WL 2347682, at *4; *see also Amburn v. State*, No. 06-02-00204-CR, 2004 WL 26515, at *2 (Tex. App.—Texarkana Jan. 6, 2004, pet. ref'd) (mem. op., not designated for publication) ("[T]he finding of probable cause is supported by the statements in the affidavit that the confidential informant observed the suspect in possession of contraband at a specific location and later relayed the information to the affiant.").

_____

search warrant and affidavit both described the entire fraternity house in the section titled 'suspected place,' the incorporated affidavit proceeded to identify [a]ppellant as 'Said Suspected Party #22' and listed the contraband that officers saw in [a]ppellant's particular room. . . . To invalidate this search by focusing solely on the section of the warrant and incorporated affidavit titled 'suspected place' would constitute reading the warrant in a 'hyper-technical' manner, rather than the common-sense approach that the law requires.").

[5]In his brief, Moody contends that "the affidavit is lacking sufficient information to show the basis of this unnamed informant's knowledge." We disagree. Here, the affidavit specifically mentions that the informant "personally observed the suspect(s) in possession of and selling a quantity of Fentanyl pills inside room 208."

The affidavit further described how Carpenter corroborated some of the information provided by the confidential informant. The informant had told Carpenter that Moody and Crosby were staying together in room 133 at the Catalina Motel. The informant also relayed to Carpenter that Moody was transporting the Fentanyl using "a gray Hyundai Sonata, bearing Texas registration VHM-8887." Carpenter later corroborated that information while conducting surveillance and observing "a gray Hyundai Sonata, bearing Texas registration VHM-8887," leaving the Catalina Motel. After stopping the vehicle after observing a traffic violation, Carpenter identified Moody as the driver of the vehicle. During the stop, Moody told Carpenter that he had been staying with Crosby at the Catalina Motel. Carpenter's corroboration of some of the information provided by the confidential informant gives support to the reliability of the informant's information. *See Diaz*, 632 S.W.3d at 893; *Arnold*, 2024 WL 2347682, at *4; *see also Trevino v. State*, No. 13-23-00123-CR, 2024 WL 3448031, at *1, *3 (Tex. App.—Corpus Christi–Edinburg July 18, 2024, no pet.) (mem. op., not designated for publication) (holding that officer's corroboration that two individuals were staying in motel room in which informant had indicated they were using drugs helped establish informant's reliability); *Perez v. State*, No. 02-14-00279-CR, 2015 WL 10324050, at *4 (Tex. App.—Fort Worth Dec. 10, 2015, no pet.) (mem. op., not designated for publication) ("[T]he confidential informant's tip was corroborated to the extent that the police were able to confirm that the car [the

suspect] drove was at the location the confidential informant said [the suspect] would be.").

Carpenter's proven track record with the confidential informant provides further support for the magistrate's probable-cause determination. *See Diaz*, 632 S.W.3d at 893; *Arnold*, 2024 WL 2347682, at *4. To that end, in his affidavit, Carpenter noted that, upon his direction and supervision, the confidential informant had successfully conducted multiple controlled purchases of illegal drugs in the past. Carpenter also stated that the confidential informant had provided him information "that has led to the arrest" of three different individuals on five felony charges.[6] The informant's proven track record gives support to the reliability of the information provided to Carpenter. *See Diaz*, 632 S.W.3d at 893; *Arnold*, 2024 WL 2347682, at *4; *see also Whitemon v. State*, 460 S.W.3d 170, 175 (Tex. App.—Fort Worth 2015, pet. ref'd) (stating that affidavit's statement that confidential informant's information "ha[d] led to the execution of several narcotic search warrants and the arrest of several narcotic dealers" provided "some indicia of reliability of the informant"); *Brown v. State*, 243 S.W.3d 141, 145–47 (Tex. App.—Eastland 2007, pet. ref'd) (holding that

---

[6]In his brief, Moody suggests that Carpenter's statements regarding the confidential informant's track record are "unconvincingly vague" because it is unclear whether "the three arrests supported by the informant happened prior to this incident, or if the information was simply used in connection with the three people arrested in this incident." We disagree. A commonsense reading of the affidavit is that the arrests of the three individuals necessarily occurred prior to Carpenter making the affidavit. To that end, the affidavit stated that the informant had provided information "that has led to" the arrest of the individuals, necessarily implying that the arrests took place before the search warrant was issued.

12

affidavit stating that confidential informant "has provided information to your affiant in the past that has led to the arrest of at least 5 drug offenders" was sufficient to establish informant reliability); *Alegria v. State*, No. 2-03-187-CR, 2004 WL 1067780, at *2 (Tex. App.—Fort Worth May 13, 2004, pet. ref'd) (mem. op., not designated for publication) ("The affidavit additionally states that the informant previously provided information that led to the arrests of individuals for possession of a controlled substance and displayed the ability to accurately identify cocaine. We therefore conclude that the affidavit provided the magistrate with a substantial basis for determining that the informant was reliable and credible.").

In his brief, Moody cites two cases—*Davis v. State*, 144 S.W.3d 192 (Tex. App.—Fort Worth 2004, pet. ref'd) (op. on reh'g) and *State v. Ozuna*, 88 S.W.3d 307 (Tex. App.—San Antonio 2002, pet. ref'd)—in support of his argument that the affidavit did not establish probable cause. We find both of the cases distinguishable.

In *Davis*, the appellant appealed the trial court's denial of her motion to suppress that argued that a search-warrant affidavit failed to demonstrate probable cause to justify a warrant. 144 S.W.3d at 195–96. The affidavit at issue stated that the confidential informant who had provided information to the officer making the affidavit "ha[d] never given information to a law enforcement agency before." *Id.* at 198. The informant also "was not clear as to locations within or outside of the identified residence" in which the informant alleged that criminal activity was taking place. *Id.* at 199–200. Finally, the information provided by the informant was not

13

independently corroborated by law enforcement. *Id.* at 200. Based on those and other factors, we held that the facts asserted in the affidavit were insufficient to establish that probable cause existed to justify the issuance of the warrant. *Id.* Here, in contrast, the confidential informant had previously worked with Carpenter and had a proven track record—the arrest of three individuals on five felony charges. The informant here had also personally observed the possessing and selling of drugs at a specific location—room 208 of the Wayfarer Motel. And finally, here, some of the information provided by the confidential informant was corroborated by Carpenter— that Moody was driving "a gray Hyundai Sonata, bearing Texas registration VHM-8887" and that he and Crosby had been staying at the Catalina Motel. We find *Davis* distinguishable.

In *Ozuna*, the trial court granted the defendant's motion to suppress the fruits of a search warrant. 88 S.W.3d at 308. In affirming the trial court's grant on the State's appeal, the San Antonio Court of Appeals noted that the subject affidavit provided evidence that the defendant "carried heroin on his person" but that it "contained no evidence connecting the suspected heroin to [the defendant's] *premises*." *Id.* at 313 (emphasis in original). The court further noted that the affidavit also "presented no evidence showing whether the informants had been used in the past and proven to be reliable." *Id.* Here, in contrast, Carpenter's affidavit connected the fentanyl to room 208. To that end, Carpenter stated that on September 19, 2024— the day before the search warrant was issued—the confidential informant had

14

contacted him to report that the informant had "personally observed the suspect(s) in possession of and selling a quantity of Fentanyl pills inside room 208." Moreover, here, Carpenter's affidavit presented evidence demonstrating that the confidential informant had a successful track record—Carpenter stated that the confidential informant had provided him information that had led to the arrest of three individuals on five felony charges. We find *Ozuna* distinguishable.

Having reviewed the magistrate's probable-cause determination and the four corners of the search-warrant affidavit, we conclude that the magistrate had a substantial basis for determining from the facts and circumstances contained in the affidavit that probable cause existed to justify the issuance of the warrant. *See Elrod*, 538 S.W.3d at 557; *Moody*, 2026 WL 253455, at *2. Accordingly, we hold that the trial court did not err by denying Moody's motion to suppress. We overrule Moody's sole issue.

### IV. CONCLUSION

Having overruled Moody's sole issue, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 30, 2026